```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
J & J SPORTS PRODUCTIONS, INC.,:
as Broadcast Licensee of the   :
May 6, 2006 DeLaHoya/Mayorga   :
Program,                       :
                               :
                Plaintiff,     :
                               :      REPORT & RECOMMENDATION
        -against-              :
                               :      06 Civ. 9930 (CM)(MDF)
JAIME RODRIGUEZ, Individually  :
and d/b/a TOWN BARBER SHOP and :
TOWN BARBER SHOP,              :
                               :
                Defendants.    :
-------------------------------x
```

TO: THE HONORABLE COLLEEN McMAHON, U.S.D.J.

According to the complaint, Plaintiff held the right to distribute the entire television broadcast of the DeLaHoya/Mayorga boxing match program of May 6, 2006, including the preliminary bouts, via closed circuit television and encrypted satellite signal. The broadcast originated via a satellite uplink and was transmitted to cable systems and satellite companies pursuant to agreements Plaintiff had with entities in New York state. Having arranged the medium for distributing the program, Plaintiff also entered into agreements which allowed entities in New York to exhibit the program to their patrons. Defendant Rodriguez is alleged to be the proprietor of Defendant Town Barber Shop, a business located on Main Street in Haverstraw. Either he or his agents and the business or its agents allegedly intercepted the signal without authority to do so and then displayed it. As a result, Plaintiff

1

seeks damages and costs pursuant to 47 U.S.C. §§553(c)(3) and 605(e)(3)(c).

The defendants did not appear or otherwise respond to the complaint. By a document dated May 5, 2007, which document has not been filed, your Honor granted Plaintiff's application for a default judgment and referred the matter for an inquest. After giving Defendants two opportunities to appear or otherwise respond and after receiving proof of service of notice of inquest, tr. 7/10/07 at 2; doc. #15, I held a hearing on July 10, 2007 at which Defendants did not appear and Plaintiff supplemented the record with an exhibit and testimony.

Edgardo Rodriguez is a private investigator, who retired as a detective in the New York City Police Department. When there is a pay per view event, about once or twice a month, he conducts an investigation to determine the locations of unauthorized broadcasts by businesses that are not on the "legitimate" or paid list of subscribers for the program. He tends to focus on localities which have a concentration of bars in an area and had made a mental note concerning Main Street in Haverstraw. On May 6, 2006, list in hand, he visited locations in Hawthorne and Spring Valley and after 10:00 p.m. went to Haverstraw where he found two unauthorized locations that were broadcasting the DeLaHoya fight. The undercard or preliminary bouts had started at 9:00 p.m.

Rodriguez went to the Town Barber Shop on Main Street where

2

he observed, through a big glass window, the program on a television set. About 25 people were watching the television. At that time, across the street at the Bicentennial Bar, which was on the subscriber list, the doors were closed, and a line of people appeared to be waiting to enter. Because Town Barber Shop was not on the list, he drove his vehicle past it while using a video recorder to tape what was occurring. The DVD created from the videotape was played for the Court, and Rodriguez explained what the pictures revealed, which included images of one of the preliminary bouts.

Following the videotaping, he prepared a "piracy" affidavit to memorialize what he had witnessed. In the affidavit, which was not offered into evidence at the inquest but was submitted in support of the application for a default judgment, Rodriguez averred that he had observed three (3) television sets in an establishment which provided hair cutting services for men. Only one television, 27 inch screen, color, mounted on a wall, displayed the program in question. He opined that the establishment had an approximate capacity of eighty (80) people and stated that he had taken three (3) separate head counts, each of which totaled twenty-five (25) people. A week later, he visited the location to make a still photograph of the front of the barbershop, a copy of which is attached as an exhibit to the piracy affidavit. The photograph does not depict a store of sufficient size to hold eighty (80) people comfortably or safely.

Other papers in the court file indicate that the defendant establishment has two addresses, 27 Main Street and 29B Main Street, Compl. ¶5, which may indicate that the barbershop occupies more space than depicted in the photograph.

    Joe Hand, Jr. operates Joe Hand productions from a suburb of Philadelphia, Pennsylvania.  The business sells satellite sports and entertainment programming to commercial establishments or public viewing locations.  Hand's father, who had been part of a group that managed Joe Frazier when he was the heavyweight champion, had founded the business, and Hand, Jr. had been in it for twenty-seven (27) years.  Over time the business had changed from an arrangement where an event would be broadcast on closed circuit television in a large arena to the current pay per view arrangement with broadcasts in local bars and establishments to reduce administrative costs and in response to the marketplace of potential viewers.  In terms of pricing, the residential price is thirty ($30) to fifty ($50) dollars per home based on the perceived quality of the boxers, whereas a commercial establishment pays ten, fifteen or twenty dollars, again based on the perceived quality of the boxers, multiplied by the establishment's capacity.  DeLaHoya was in the category of twenty dollar boxers.

    Hand further explained that his father had worked with another individual, who formed J&J Sports Productions, which operates on the west coast.  As a result of cooperation between

4

the two businesses, Joe Hand productions sells for J&J in the eastern United States, and J&J sells for Joe Hand in the western United States.  As Hand put it, they work "hand in hand with one another.", tr. 7/10/07 at 10, and as a result his business had sold this fight in the eastern United States for J&J.  He identified the license agreement by which Golden Boy Promotions, an entity owned by DeLaHoya, had granted J&J the rights to sell the broadcast to commercial establishments.

In terms of enforcement or protection of his interest, prior to a program, Hand prepares a list of the subscribers, which list is distributed to private investigators by his attorneys.  The list gives the investigators a head start by directing them away from legitimate broadcasting locations.  Following the report concerning the Town Barber Shop, Hand reviewed his records to determine that Town was not on the late subscriber list, _i.e._, an establishment which had purchased the program as late as the date of the broadcast.  He cross checked with his sales department as to the name of the establishment and the address to determine that Town had not purchased the program.

Relying on his knowledge of common practice, Hand hypothesized or speculated that the signal had been pirated by running a line from a residential cable subscriber in an apartment above the barbershop or by use of a black box, which was available for purchase from websites.  His customer base furnished the motive for bringing enforcement actions.  A

5

business owner or operator, who charged admission and provided refreshments, would observe individuals nearby drinking beer and watching the broadcast for free. The business owner would complain immediately to Hand's organization, which was unable to respond at that moment. The effect would be palpable on arrangements for future boxing matches because Hand's customer would complain that he wanted to be legal or legitimate but that Hand's organization was not protecting the customer's investment.

    A default judgment entered on well-pleaded allegations of a claim establishes a defendant's liability. The allegations are to be accepted as true, except those relating to the amount of damages. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974); Time Warner Cable, etc. v. Barnes, 13 F. Supp.2d 543, 547 (S.D.N.Y. 1998). The witnesses' testimony and the allegations of the complaint establish liability under either §553 or §605, see Kingvision Pay-Per-View Ltd. v. Espinosa, 05 Civ. 10178 (KMW) (GWG) (S.D.N.Y. Feb. 28, 2007) (2007 Westlaw 625362 at *2) (report and recommendation; adopting order, 4/10/07, doc. #15); Time Warner Cable, etc. v. Googie's Luncheonette, Inc., 77 F. Supp.2d 485, 488 (S.D.N.Y. 1999); as a result, Plaintiff may recover damages only pursuant to one section. Barnes, supra, 13 F. Supp.2d at 548. Plaintiff has elected the statutory damages of §605(e)(3)(C)(i)(II)(not less than $1,000 nor more than $10,000 for each violation of §605(a)) plus the enhancement of

6

§605(e)(3)(C)(ii)(court may increase actual or statutory damages by an amount up to $100,000 if the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain").

As Judge Karas observes in J&J Sports Production, Inc. v. Kosoria, 06 Civ. 2102 (KMK) (S.D.N.Y. June 1, 2007) (2007 Westlaw 1599168 at *2) (citing cases), courts in the Second Circuit have used two methods for awarding §605 statutory damages: a statutory amount plus an amount for the enhancement or a formula which multiplies the number of patrons present by an amount per patron plus the enhancement. Googie's Luncheonette, supra, 77 F. Supp.2d at 489-490 (citing cases). In this case, under the formula used by Judge Karas in Kosoria, the damage award would be twenty-five (25) patrons multiplied by the residential charge for the program, fifty dollars ($50), which amounts to $1,250. Unlike Kosoria, the instant record does not contain evidence that the residential charge for this boxing match was actually $54.95. To substantiate the fifty dollar charge, the Court must draw the favorable inference from witness Hand's testimony that DeLaHoya is a caliber of boxer who falls into the high end of the rate used for commercial establishments and by analogy would also fall in the high end of the 20-50 dollar range Hand related in his testimony concerning residential charges for boxing matches.

Plaintiff proposes that a residential rate of $50 or $54.95 be multiplied by the capacity of the defendant establishment, now

7

reduced to fifty (50) persons, Plaintiff's unpaginated Memorandum of Law at 6, for a total of $2,500 or $2,747.50.  In <u>Kosoria</u> Judge Karas eschewed this formula because it had a punitive nature to it, even though at some point during the course of a series of boxing matches, a program which may air for several hours, the establishment, from a theoretical and speculative view, might actually reach its capacity.  2007 Westlaw 1599168 at *2.  The punitive or deterrent nature of the regulatory scheme lies in the enhancement and not in the award of actual or statutory damages.  Accordingly, I respectfully recommend a base award of $1,250.

With respect to the enhancement, the circumstances indicate that the violation was willfully committed.  <u>See</u> <u>Googie's Luncheonette</u>, <u>supra</u>, 77 F. Supp.2d at 490 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").  Plaintiff presented no evidence of a repeat violation nor evidence of direct commercial gain or advantage in terms of an admission fee to the barbershop to view the program; however, indirectly, while showing the boxing matches, the barbershop arguably became a more attractive place for a trim or other grooming service.  The statutory maximum enhancement requested by Plaintiff, however, greatly exaggerates the nature of the offense, even where the offender is not entitled to the benefit of the doubt from having

8

failed to respond to legal process.[1]  Given the discretion reposed in the district court by the statutory language, the legislature would hardly be surprised if a court relied on the traditional concept of treble damages, which is often used in public policy as a sum specific deterrent as opposed to a discretionary deterrent.  See Googie's Luncheonette, supra, 77 F. Supp.2d at 491.  Accordingly, I respectfully recommend an enhancement of $2,500 for a total statutory damage award of $3,750.[2]

As the prevailing party, Plaintiff is also entitled to full costs, including reasonable attorney's fees.  47 U.S.C. §605(e)(3)(B)(iii); Googie's Luncheonette, supra, 77 F. Supp.2d at 491; Barnes, supra, 13 F. Supp.2d at 549.  Plaintiff's attorney has submitted an affidavit and itemized schedule which seeks 4.5 hours of attorney time at $200 per hour ($900), 2.37 hours of paralegal time at $75 per hour ($177.75) and $550 total

---

[1] Congress actually enacted a modest incentive to participate.  "In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250."  47 U.S.C. §605(e)(3)(C)(iii).

[2] In terms of determining the appropriate enhancement, your Honor's or any judge's discrete view of this cable theft case may be very different from mine.  For example, in a case against a beer garden which had misappropriated a boxing match for eighteen (18) patrons without a cover charge, Judge Townes awarded an enhancement of $10,000 on a statutory minimum award of $1,000 as a deterrent intended not to put a small business out of business. Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp.2d 59, 64 (E.D.N.Y. 2006).

9

costs for the filing fee and a service of process fee.[3]  In this type of case Judge Karas in <u>Kosoria</u> accepted these hourly rates for this attorney, 2007 Westlaw 1599168 at *4, and my review of the affidavit and itemized schedule of services provided, in light of my knowledge of the proceedings, has persuaded me that the time spent was reasonable.  Accordingly, I respectfully recommend an award of costs of $1,627.75.

Plaintiff's memorandum of law also contains a discussion of vicarious or supervisory liability with respect to the relationship between Rodriguez and Town Barber Shop.  The averments in the complaint concerning the parties are all on information and belief.  As a result, Town Barber Shop, a business entity, the exact nature of which is unknown, is a domestic corporation, partnership and sole proprietorship.  Obviously, if it is a sole proprietorship, it does not exist as an entity apart from the proprietor.  If it is an entity separate and apart from Rodriguez, joint and several liability will allow Plaintiff to satisfy the entire judgment once from the available assets of either entity.  As the proceedings now stand, both of the defendants have violated the statute.  Accordingly, I

---

[3] In her affidavit at ¶5, Plaintiff's attorney indicates that she conducted a search of the New York State Alcohol Beverage Control records to learn that Virgilio Avila and Suany L. Carcamo are principals of Hunduras Maya Restaurant as evidenced by exhibit B.  The affidavit does not have an exhibit B, and the relationship of these individuals or this business to this case is not apparent.  As a result, I have treated this paragraph as meaningless surplusage, which was probably included in error.

respectfully recommend that your Honor direct entry of a judgment against the defendants jointly and severally.

Based on the foregoing, I respectfully recommend that your Honor award judgment in favor of J&J Sports Productions, Inc. and against Jaime Rodriguez and Town Barber Shop, jointly and severally, in the amount of three thousand seven hundred fifty dollars ($3,750) plus costs, including a reasonable attorney's fee, of one thousand six hundred twenty-seven dollars and seventy-five cents ($1,627.75).

## NOTICE

Pursuant to 28 U.S.C. §636(b)(l), as amended, and Rule 72(b), Fed.R.Civ.P. the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (see Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Colleen McMahon at the United States Courthouse, 500 Pearl Street, Room 640, New York, New York 10007 and to the chambers of the undersigned at the United States Courthouse, 300 Quarropas Street, Room 434, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judgment that will be entered by Judge McMahon.  See Thomas v.

11

Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298 (2d Cir.), cert. denied, 506 U.S. 1038 (1992); Small v. Secretary of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); Wesolek v. Canadair, Ltd., 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge McMahon and should not be made to the undersigned.

Dated: August 3, 2007
White Plains, New York

Respectfully submitted,

_____
Mark D. Fox
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent to the following:

The Honorable Colleen McMahon

Mr. Jaime Rodriguez
27 Main Street
Haverstraw, New York 10927-1934

Town Barber Shop
27 Main Street
Haverstraw, New York 10927-1934

Julie Cohen Lonstein, Esq.
1 Terrace Hill
P.O. Box 351
Ellenville, New York 12428